IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRANDON CHRISTOPHER KEY   [DL-9670] | : : : | CIVIL ACTION |
| v. | : : | |
| GERALD ROZUM, et al. | : | NO. 05-2301 |

## REPORT AND RECOMMENDATION

M. FAITH ANGELL
CHIEF UNITED STATES MAGISTRATE JUDGE                                October 28, 2005

Presently before this Court is a *pro se* petition for writ of habeas corpus filed, pursuant to 28 U.S.C. §2254, by a state prisoner. Petitioner is currently incarcerated at State Correctional Institution ["SCI"] Somerset, Pennsylvania, where he is serving a seventeen and one-half to thirty-five year sentence for attempted murder and related offenses. For the reasons which follow, it is recommended that the Petition for Writ of Habeas Corpus be denied and dismissed as untimely under 28 U.S.C. §2244(d)(1), and that Petitioner's pending motion(s) for additional materials and to amend his habeas petition be denied.

### BACKGROUND[1]

On October 23, 1997, following a jury trial before the Honorable Patricia A. McInerney of the Philadelphia Court of Common Pleas, Brandon Key was convicted of two counts of attempted murder, burglary, four counts of aggravated assault, four counts of simple assault,

---

[1] The facts in this discussion have been taken from Mr. Key's habeas petition, the Commonwealth's answer (with exhibits), Petitioner's traverse and the state court records.

violations of the Uniform Firearms Act, and eluding police, after he fled from police when stopped for a traffic violation. *Commonwealth's "Response To Petition For Writ Of Habeas Corpus"* [Docket Entry No. 9][2]: Exhibit 1 (April 24, 2004 Superior Court Opinion) at p.1.

On December 9, 1997, Judge McInerney sentenced Petitioner to an aggregate prison term of seventeen and one-half to thirty five years. *Id.*[3]

On December 18, 1997, Mr. Key filed *pro se* motions for a new trial and reconsideration of sentence. *State Court Records*: "Motion for Post-Sentence Relief" [identified as "D-2" in the bottom center of page].[4]

A hearing on the motion for reconsideration of sentence was held on January 23, 1998. At that time, Judge McInerney reconfigured Petitioner's sentence and , reimposed the same aggregate sentence. *Commonwealth's Response*: Exhibit 1 (April 24, 2004 Superior Court Opinion) at p. 2.  *See* N.T. 1/ 23/98 at pp. 1-13.

---

[2]   Hereinafter "Commonwealth's Response."

[3]   Judge McInerney sentenced Petitioner as follows: on the charge of attempted murder of Officer Manzo - five to ten years; on the charge of attempted murder of Officer Fleming - five to ten years (consecutive); on four counts of simple assault (as to Officer Santiago, Miss Cannon, Officer Phillips and Mr. Gracie) one to two years each (consecutive); on the burglary charge - five to ten years (concurrent); on the gun charge - three and one-half to seven years (consecutive); and the eluding police charge - one to two years (concurrent).  No further sentence was imposed on the recklessly endangering another person, carrying firearms on a public street, and possession of an instrument of crime offenses.  *See* N.T. 12/9/97 at pp 24-27.

[4]   On December 22, 1997, trial counsel filed a notice of appeal on behalf of Petitioner. *State Court Records:* "Notice of Appeal" [identified as "D-3" in bottom center of page].  By Order dated January 20, 1998, the Superior Court struck the notice of appeal in light of the trial court's order granting reconsideration of sentence. *State Court Records:* January 20, 1998 Superior Court Order [identified as "D-4" in bottom center of page].

Trial counsel was permitted to withdraw; new counsel (Thomas Q. Ciccone, Jr.) was appointed to represent Petitioner on his motion for a new trial. *Commonwealth's Response*: Exhibit 1 (April 24, 2004 Superior Court Opinion) at p. 2.

On March 17, 1998, following a hearing, Judge McInerney denied Petitioner's motion for a new trial. *Id.* *See* N.T. 3/17/98 at pp. 1-11.

Mr. Key did not file a direct appeal of his sentence.[5]

On December 13, 1998, Petitioner received a letter from Attorney Edward Meehan. In this letter Attorney Meehan stated that he had been contacted by Petitioner's mother who had made a payment of $600.00, and that he would "take care of petitioning Judge McInerney for the right to file an appeal *nunc pro tunc*." *Commonwealth's Response*: Exhibit 1 (April 24, 2004 Superior Court Opinion) at p. 2 and Exhibit 2 ("Petition for Allowance of Appeal" filed July 21, 2004) at Exhibit "C" (December 8, 1998 letter from Attorney Meehan).

On June 17, 1999, Petitioner filed a *pro se* petition for collateral relief under the Pennsylvania Post Conviction Relief Act ["PCRA"], 42 Pa.C.S.A. §9541 *et seq.* In this petition, Mr. Key asserted that appellate counsel [Attorney Ciccone] had falsely led Petitioner to believe for five months (March 1998 through August 1998) that counsel had taken the necessary steps to pursue a direct appeal to the Superior Court, when, in fact, no direct appeal had been filed. Petitioner asserted seven grounds of ineffective assistance of trial counsel as the basis for appellate relief. *State Court Records:* PCRA Petition [identified as "D-5" in bottom center of page].

---

[5] In July 1998, Petitioner was convicted of murder in an unrelated action, and received a life sentence. He was represented in the homicide case by Attorney Ciccone.

The PCRA Court appointed counsel, who filed an amended PCRA petition on January 4, 2000. *Id:* "[Counseled] Petition for Reinstatement of Appellate Rights *Nunc Pro Tunc*" [identified as "D-6" in bottom center of page].

On September 14, 2000, PCRA Counsel filed a motion to withdraw her appearance. In this motion, Counsel represented that Petitioner had demanded that she withdraw immediately (or he would file a complaint with the Disciplinary Board), and had, at Counsel's request, executed a "Waiver of Counsel" on September 5, 2000. *State Court Records:* "Motion to Withdraw Appearance of Counsel" and "Waiver of Counsel" [identified as "D-9"and "D-10" in bottom center of page].

By Order dated September 15, 2000, the PCRA Court granted Counsel's motion to withdraw and permitted Petitioner to proceed *pro se*. *Id.:* September 15, 2000 Order [identified as "D-11" in bottom center of page].

Petitioner filed a *pro se* memorandum in support of his PCRA petition. *State Court Records:* "*Pro Se* Memorandum In Support Of Reinstatement Of Appellate Rights *Nunc Pro Tunc* Under the P.C.R.A" [identified as "D-14" in bottom center of page].

On September 26, 2002, the PCRA Court issued a notice of intent to dismiss the PCRA petition within twenty days, on the bases that it was untimely and that the issues raised were meritless. *Id.:* September 26, 2002 Notice [identified as "D-15" in bottom center of page].

On October 8, 2002, Petitioner filed objections to the notice of intent to dismiss. *Id.*: "Petitioner's *Pro Se* Objections To The Court's Notice Of Intention To Dismiss (Without A Hearing) His PCRA Petition" [identified as "D-16" in bottom center of page].

On November 20, 2002, the PCRA Court dismissed Mr. Key's PCRA petition.

*Commonwealth's Response*: Exhibit 1 (April 24, 2004 Superior Court Opinion) at p. 2.

Petitioner appealed the denial of PCRA relief to the Pennsylvania Superior Court, raising the following two issues:

> 1. "Did the lower court err and abuse its discretion, depriving [Key] of Due Process, by dismissing as untimely (without a hearing) his PCRA [P]etition, where the PCRA court's [O]pinion indicates that it did not review [Key's] pleadings?"
>
> 2. "Did the lower court err and abuse its discretion, depriving [Key] of Due Process, by dismissing as untimely (without a hearing) his PCRA [P]etition, where [Key] [pled] and satisfied the "due diligence" requirements of 42 PA.C.S.A. §§ 9545(b)(1)(ii) and (b)(2)?"

*Id.* at pp. 2-3.

The Superior Court, in an April 21, 2004 Opinion, affirmed the denial of PCRA relief. The Superior Court concluded that lower court's dismissal of Mr. Key's petition as untimely was supported by the evidence of record and was free of legal error. The Superior Court rejected Petitioner's due diligence argument, stating "the record does not support Key's claim that he did not know and could not have ascertained with due diligence that a PCRA petition had not been filed on his behalf within the PCRA time limitation period." *Id.* at pp. 3-8.

After unsuccessfully seeking reargument in the Pennsylvania Superior Court, Petitioner sought discretionary review in the Pennsylvania Supreme Court. *State Court Records*: Docket Entries at June 23, 2004 and July 21, 2004.

By Order dated April 19, 2005, the Pennsylvania Supreme Court denied *allocatur*. *Id.*: Docket Entries at April 19, 2005.

On May 9, 2005, Mr. Key signed and dated the instant habeas petition. It was filed in this Court on May 16, 2005.[6]

Petitioner asserts the following claims in his habeas petition:

1. "While attempting to pursue a direct appeal, I was (1) deprived of Due Process, Effective Assistance and Access to the Courts by two successive attorneys; (2) deprived of Due Process, Equal Protection and Access to the Courts and Equal Protection by the Pennsylvania Superior and Supreme Courts."
2. "Counsel deprived me of Due Process, Effective Assistance, the Privilege Against Self-Incrimination, the Right to Testify on My Own Behalf, and Access to the Courts by failing to (1) move to suppress certain identifications; (2) request pre-trial line-ups and move for dismissal of charges which lacked probable cause; and (3) obtain my consent before advancing a 'self-defense strategy,' pursuant to which he conceded some elements of certain offenses and all elements of others."
3. "Trial counsel deprived me of Effective Assistance, Due Process, Equal Protection and Meaningful Access To The Courts by failing to (1) move in limine to preclude the introduction of 'other crimes' evidence; (2) request at trial that the Court admitting the evidence; (3) object to display of a 'wanted' poster bearing a mugshot of me from a previous arrest; and (4) object and move for a mistrial when Officer Phillips began to cry during his testimony and/or when in a dramatic show of force the start of the prosecutor's closing arguments."
4. "I was deprived of Due Process, Equal Protection and trial before an Impartial Tribunal where the court enhanced 5 of my sentences without the requisite number and type of aggravating factors to justify such a departure from the sentencing guidelines and the imposition of consecutive sentences."

*Habeas Petition* [Docket Entry No. 1] at pp. 8-9.

On August 22, 2005, the Respondents answered Mr. Key's habeas petition, arguing that the petition is untimely and is not subject to equitable tolling. *Commonwealth's Response* at pp. 3-7.

---

[6] For the purposes of the Report and Recommendation, under the prison mailbox rule, I will accept the earliest date, May 9, 2005, as the date of filing. *See Burns v. Morton*, 134 F.3d 109, 113 (3d Cir. 1998).

On September 28, 2005, Mr. Key filed a traverse to the Commonwealth's response. In this pleading, Petitioner argues that he is entitled to: (1) equitable tolling of the habeas statute of limitations for the entire period from June 14, 1999 through April 19, 2005 while he was attempting to exhaust his state remedies before seeking relief in federal court and (2) statutory tolling of claims which were not part of his PCRA petition because "they were not subject to the state courts' untimeliness rulings [and] [t]hus, they are not barred from statutory tolling by the new state untimeliness ruling deference doctrine. See Pace v. DiGuglielmo, 125 S.Ct. 1807, 1812 (2005)." *Petitioner's Traverse* [Docket Entry No. 12] at pp. 1-15.

## DISCUSSION

The Antiterrorism and Effective Death Penalty Act of 1996 ["AEDPA" or the "Act"], signed into law on April 24, 1996, significantly amended the laws governing habeas corpus petitions.

One of the amended provisions, 28 U.S.C. §2244(d), imposes a one-year statute of limitations on state prisoners who seek federal habeas relief. A habeas petition must be filed within one year from the date on which the petitioner's judgment of conviction becomes final. *See* 28 U.S.C. §2244(d)(1). While the date on which the petitioner's conviction becomes final is typically the start date for the limitations period, the statute permits the limitation period to run from four different points in time, depending on which occurs latest. In addition to the date on which the petitioner's conviction becomes final, the start date can also run from: (1) "the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action"; (2) "the date on which the constitutional right asserted was initially

recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review"; or (3) "the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence." *See* 28 U.S.C. §2244(d)(1)(A)-(D).

As an initial matter, I must determine the date on which Petitioner's statute of limitations began running.  In his traverse, Petitioner suggests that the one-year AEDPA limitations period began on one of "6 different actual dates," which are identified as follows:

> 1.  September 28, 1998 - the date of the Superior Court docketing statement indicating that no direct appeal had been filed by Attorney Ciccone.
> 2.  April-June 1999 - when Petitioner "figured," without being formally notified, that Attorney Meehan "wasn't doing anything to regain his direct appeal rights."
> 3.  July 11, 2003 - the date on which the PCRA Court denied relief.
> 4.  January 23, 2004 - the date on which Petitioner received the Superior Court docketing statement "indicating that the Court had allowed the DA's office to file its brief late, thus denying [Petitioner his] court rule-mandated right to file a reply brief."
> 5.  April 21, 2004 - the date on which the Superior Court denied the PCRA appeal.
> 6.  April 19, 2005 - the date the Supreme Court of Pennsylvania denied *allocatur*.

*Traverse* at p. 14.  Petitioner argues that whatever the "claim accrual date," his AEDPA statute of limitations period should be statutorily/equitably tolled until his state court proceedings were concluded on April 19, 2005.  *Id.* at pp. 14-15.

Petitioner's underlying habeas claims assert ineffective assistance of trial counsel and error by the sentencing court in enhancing his sentence.  The factual predicate for the alleged trial and sentencing errors were known, or could have been discovered by Petitioner, before his conviction became final on April 16, 1998, the date on which the time for filing a direct appeal to the Pennsylvania Superior Court (30 days) expired.  *See* Pa.R.A.P. 720(a)(3) ("If the defendant

does not file a timely post-sentence motion, the defendant's notice of appeal shall be filed within 30 days of imposition of sentence, except as provided in paragraph (A)(4)."). Therefore, I conclude that Petitioner's habeas statute of limitations began on April 16, 1998, and absent any tolling, expired one year later on April 15, 1999.[7]

A. Statutory Tolling.

The AEDPA amendments include a tolling provision for "the time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." *See* 28 U.S.C. §2244(d)(2).

Petitioner's PCRA petition was not filed for several months after his federal statute of limitations had expired, and was determined to be untimely by the state court. The PCRA petition cannot, therefore, be the basis for any statutory tolling of the AEDPA limitations period. *Id*. *See Pace v. DiGuglielmo*, 125 S.Ct. 1807, 1811 (2005)(where the state court has rejected petitioner's PCRA petition as untimely, the PCRA petition is not "properly filed," and does not warrant statutory tolling under §2244(d)(2)).

The instant habeas petition was not filed for over six years beyond the habeas deadline, and does not meet the requirements for statutory tolling under 28 U.S.C. §2244(d)(2).[8]

---

[7] Petitioner's claims of being thwarted in his attempts to obtain reinstatement of his direct appeal rights in the state system are relevant to his equitable tolling arguments. However, they do not alter the date on which his AEDPA statute of limitations began to run.

[8] In his traverse, Petitioner appears to be arguing that claims raised in his habeas petition which were not included in his PCRA petition are subject to statutory tolling because "they were not subject to the state court's untimeliness rulings [and] [t]hus, they are not barred from statutory tolling by the new state untimeliness ruling deference doctrine." *Traverse* at p. 15. This is simply a misstatement of law.

B.  Equitable Tolling.

§2244's one-year statute of limitations is subject to equitable tolling.  However, "[E]quitable tolling is proper only when the 'principles of equity would make [the] rigid application [of a limitation period] unfair.'  Generally, this will occur when the petitioner has 'in some extraordinary way . . . been prevented from asserting his or her rights.'  Moreover, to be entitled to equitable tolling, '[t]he petitioner must show that he or she 'exercised reasonable diligence in investigating and bringing [the] claims.'  Mere excusable neglect is not sufficient. [citations omitted]."  *Brown v. Shannon*, 322 F.3d 768, 773 (3d Cir.), *cert. denied*, 123 S.Ct. 2617 (2003).

Petitioner argues that, under the circumstances of his case, he is entitled to equitable tolling because he spent five years in the state courts diligently seeking reinstatement of his direct appeal rights.  His attempts were allegedly thwarted by two attorneys who misled him about what they would do to pursue relief on his behalf, and by state courts which made untimeliness findings that were not based upon the record.  Petitioner contends that the actions of counsel and the state courts prevented him from asserting his rights.  *Traverse* at pp. 1-13.

As a general rule, in non-capital cases (such as Petitioner's) attorney error is not a sufficient basis for equitable tolling of AEDPA's one year statute of limitations.  *Schlueter v. Varner*, 384 F.3d 69, 76 (3d Cir. 2004), *cert. denied,* 125 S.Ct. 2261 (2005).  *See Hazime v. Brooks,* CA No. 05-3706, 2005 WL 2491580 at *3 (E.D. Pa. September 20, 2005)(in non-capital cases, "attorney error, miscalculation, inadequate research, or other mistakes" do not warrant equitable tolling)(*quoting Fahy v. Horn*, 240 F.3d 239, 244 (3d Cir. 2001)).

There are "narrow circumstances" in which "egregious attorney misconduct" may constitute extraordinary circumstances. However, attorney malfeasance standing alone does not warrant equitable tolling. Petitioner must also establish, under the specific circumstances that he faced, that he acted with reasonable diligence in pursuing his claims. In *Schlueter*, the Third Circuit determined that where "lengthy periods of time had elapsed following [petitioner's] conviction before he sought state and federal relief," application of equitable tolling was not warranted. *Schlueter*, 384 F.3d at pp. 74-79 (3d Cir. 2004).

In Mr. Key's case, even if I were to assume *arguendo*, solely for the purposes of this Report and Recommendation, that Attorney Ciccone made "affirmative misrepresentations" to Petitioner about his intent to file a direct appeal, Petitioner knew (as stated in his traverse), as of September 28, 1998, that Attorney Ciccone had not filed a direct appeal. On September 28, 1998, approximately seven months of Petitioner's one year PCRA and AEDPA statute of limitations remained.[9]

In his traverse, Petitioner states that when it dawned on him in September 1998 that Attorney Ciccone had been lying to him about purported appellate actions on his behalf, he had "ample time" to hire another lawyer, which is what he did. According to Petitioner, Attorney

---

[9] In his *pro se* PCRA petition, filed on June 17, 1999, Petitioner stated:

"Appellate counsel, Thomas Ciccone Jr., who was appointed to this case in February of 1998, led Defendant to believe that he had taken the necessary steps to pursue an appeal to the Superior Court when in fact he took no appellate action whatsoever. Appellate counsel misled Defendant for 5 months (March 1998 to August 1998) concerning this matter before the truth was made known."

*State Court Records:* PCRA Petition [identified as "D-5" in bottom center of page]. Based upon this pleading, I could conclude that Petitioner knew of Attorney Ciccone's alleged misrepresentations prior to September 28, 1998.

Meehan also "deceived" him by taking money from Petitioner's mother and promising in a December 8, 1998 letter to seek restoration of Petitioner's direct appeal rights, and then failing to respond to Petitioner's letters and failing to file a PCRA petition before the state limitations period expired on April 16, 1999.  According to Petitioner, he had no knowledge of the PCRA deadline and was unaware that it expired on April 16, 1999.  *Traverse* at pp. 7-11.

Petitioner's assertion that he had no knowledge of the PCRA deadline before it expired on April 16, 1999 is not supported by the record.  In his *allocatur* petition, Mr. Key asserted that he "**did discover** the ineffectiveness of post-trial counsel Ciccone, which is what **prompted the hiring**, before the PCRA deadline, of Attorney Meehan."  *Commonwealth's Response*: Exhibit 2 ("Petition for Allowance of Appeal" filed July 21, 2004) at p. 11 n.5 [emphasis in original].

Petitioner contends that Attorney Meehan "lied when he told [Petitioner] he would seek reinstatement of [his] appeal rights."  *Habeas Petition* at p. 7.  The basis of this alleged "deception" is the fact that Petitioner wrote three letters to Attorney Meehan in December 1998, January 1999, and March 1999, inquiring about the status of his appeal, to which Attorney Meehan never responded.  By his own admission, when Attorney Meehan did not respond to the March 7, 1999 letter, Petitioner "began to prepare a PCRA petition *pro se*."  This PCRA petition was filed on June 17, 1999, two months after the PCRA deadline expired, and should be, according to Petitioner, deemed "fast enough" to show reasonable diligence in investigating and bringing his claims.  *Traverse* at pp. 10-11.

In an August 2, 1999 letter to Attorney Meehan, Petitioner wrote:

"I have not had word from my immediate family in many months.  Therefore, I don't know what caused things to fall through in terms of you representing me on appeal.  I filed a PCRA to Judge McInerney to have counsel appointed and my appellate rights restored.  I am contacting you in hopes of learning what happened

> to the negotiations between you and my family. I am speculating that my mother may be overwhelmed with guilt at not being able to retain you and for this reason is hesitant to contact me. I have written to you at least twice this year but have gotten no response. I understand fully that you are very busy and since you are not being retained by me it may not be a priority to contact me. However, I am currently pooling my financial resources and, in the event that I secure a new trial in either of my cases, I will most likely be seeking your services. I know that I have a ways to go before that will be necessary but I'm making my plans now. I look forward to hearing from you at your earliest convenience and hope you can bring me out of the dark concerning what occured (or didn't occur) between my family and yourself.

*State Court Records:* "[*Pro Se*] Petition for Reinstatement of Appellate Rights *Nunc Pro Tunc*" [identified as "D-7" in bottom center of page] at Exhibit "D" (August 2, 1999 letter from Mr, Key to Attorney Meehan).

While waiting for a response to letters to Attorney Meehan, in January 1999, Petitioner filed "a PCRA petition to get [his] appeal rights back in the homicide case." He wrote to Attorney Meehan, explaining that he did so because "[He] felt that [he] should take some action on that [homicide] case instead of sitting on my hands." *Commonwealth's Response*: Exhibit 2 ("Petition for Allowance of Appeal" filed July 21, 2004) at Exhibit "D-2" (January 22, 1999 letter from Petitioner to Attorney Meehan).

Based upon my examination of the specific circumstances that Petitioner faced in this case, I conclude that he does not meet very high burden of proof needed to justify equitable tolling. *See Mahmood v. Gonzales*, No. 03-3760, slip op. at p. 13 (3d Cir. October 27, 2005)("[W]e are also mindful that '[e]quitable tolling is an extraordinary remedy which should be extended only sparingly.' [citation omitted]").

To the extent that I accept for the purposes of this Report and Recommendation that Petitioner has shown attorney malfeasance by Attorney Ciccone, that malfeasance did not cause

Mr. Key's habeas petition to be filed over six years beyond the expiration of the AEDPA statute of limitations.

I find that Attorney Meehan's failure to respond to Petitioner's letters does not rise to the level of affirmative misrepresentation. As the *Schlueter* Court found, there is a material distinction between a plaintiff who is misled by what an attorney said he had done, and a plaintiff who is misled by what an attorney said he would do. *Schlueter*, 384 F.3d at 76 (3d Cir. 2004).

I do not find that Petitioner, who was clearly aware of his PCRA rights, and had the ability to file various pretrial, post-trial and PCRA pleadings without the assistance of counsel, acted with reasonable diligence in waiting four months with no response from Attorney Meehan before preparing a *pro se* PCRA petition (at least one month before the PCRA deadline expired), and then waiting an additional three months to file the *pro se* PCRA petition (two months after the deadline expired). In light of Petitioner's August 2, 1999 letter to Attorney Meehan, Petitioner was aware that negotiations between his family and Attorney Meehan were problematic, eventually leading to Attorney Meehan "not being retained by [Petitioner]." Despite this, Petitioner who began preparing a *pro se* PCRA petition before the deadline expired, did not act to protect his PCRA rights by filing the petition within the statutory period.

At least as early as July 2004, Petitioner was aware of AEDPA, arguing in his *allocatur* petition that the Pennsylvania Superior Court had erred in denying his PCRA appeal, by improperly adopting "a portion of the 3rd Circuit's 'equitable tolling' standard. U.S. v. Midgley, 142 F.3d 174, 179 (3rd Cir. 1998)("Equitable tolling may be appropriate if . . . the defendant **actively misled** the plaintiff.)[emphasis added by Petitioner]." *Id.*: Exhibit 2 ("Petition for

Allowance of Appeal" filed July 21, 2004) at p. 9.  Yet, the instant habeas petition was not filed until almost ten months later.  Petitioner did not exercise due diligence in asserting claims in this forum.

I find that under the circumstances of this case, including various gaps in Petitioner's attempts to pursue his claims, that Mr. Key has not established that he has been "prevented in an extraordinary way from asserting his rights."

The instant habeas petition is untimely and not entitled to either statutory or equitable tolling.[10]


### RECOMMENDATION

For the reasons stated above, it is recommended that the Petition for Writ of Habeas Corpus, pursuant to 28 U.S.C. §2254, be DENIED AND DISMISSED AS TIME-BARRED.  It is further recommended a finding be made that there is no probable cause to issue a certificate of appealability.


BY THE COURT:


_____
M. FAITH ANGELL
CHIEF UNITED STATES MAGISTRATE JUDGE

---

[10]  Because I believe that this action should be dismissed as untimely, I recommend that Petitioner's Renewed Motion(s) For Additional Materials And Leave To Amend Habeas Petition [Docket Entry Nos. 10 and 11] be denied.